TIMOTHY COURCHAINE
United States Attorney
District of Arizona

PATRICK E. CHAPMAN
Arizona State Bar No. 025407
Assistant United States Attorney
Two Renaissance Square
40 N. Central Ave., Suite 1800
Phoenix, Arizona 85004
Telephone:  602-514-7500
Email: Patrick.Chapman@usdoj.gov
*Attorneys for Plaintiff*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | No. CR-25-00333-PHX-DJH |
| Plaintiff, | |
| vs. | **UNITED STATES' SENTENCING MEMORANDUM** |
| Yousif  Evan Albeer Kakki, | |
| Defendant. | |

The defendant is a low-level firearms trafficker who used and manipulated a young female into purchasing firearms on his behalf. The young woman will now have the disability of a felony conviction for the rest of her life. The defendant's conduct and its effects warrant a sentence of incarceration. Accordingly, the United States recommends that this Court sentence the defendant to 10 months' imprisonment followed by supervised release.

**I.     FACTS**

On March 11, 2024, ATF received information that Jamari Hill made a prepaid purchase of a Barrett, 82A1 .50 caliber rifle at Ammo AZ, a federal firearms licensee in Phoenix. According to the receipt, Hill paid just under $11,000 for the rifle while she earned approximately $10,500 in the third and fourth quarters of 2023. The purchase was delayed during the background check and Hill left Ammo AZ without the firearm.

Due to the caliber of the firearm and the Hill's wages, ATF suspected that this was a straw purchase. An inquiry showed that Hill was associated with three firearm recoveries with "times-to-crimes" between 288 and 568 days. ATF noted that each of the recovered firearms was a Glock pistol. Other records showed that Hill had purchased two Glocks at one time, further indicating she was straw purchasing. Based on a totality of the circumstances, ATF seized the Barrett rifle prior to the transfer.

Ultimately, ATF determined that Hill had purchased five firearms between January 2021 and March 2024. The dates, locations, and firearms purchased are below:

| Date | FFL | Firearms |
|---|---|---|
| 1/2/2021 | Peoria Pawn (Peoria, AZ) | Glock 43x, 9 mm pistol, SN: BRSF909 |
| 6/7/2022 | Tactical Studio (Glendale, AZ) | Glock 19x, 9 mm pistol, SN: BVUU909 |
| 6/14/2022 | Tombstone Tactical (Phoenix, AZ) | Glock 26, Gen 5, 9 mm pistol, SN: AGPS321<br><br>Glock 19x, 9 mm pistol, SN: BWZP342 |
| 3/8/2024 | Ammo AZ (Phoenix, AZ) | Barrett, 82A1 .50 BMG rifle, SN: AA017545 |

On March 14, 2024, Ammo AZ called ATF to report a suspicious phone call from a person posing as Hill. The FFL explained that a male pretending to be Hill called them and asked about the background check so they could pick up the .50 caliber rifle. The FFL knew Hill was a female, so they found the call to be suspicious. The caller was also using a different phone number than the one the defendant provided. ATF associated the caller's number to Yousif Kakki, the defendant, through a database search. Notably, one of the firearms Hill purchased was found in this defendant's possession 288 days after purchase.

On March 18, 2024, ATF interviewed Hill. She initially denied purchasing any firearms in the last year, stating she last purchased a firearm in 2022. She estimated she

had bought one or two "Smith & Westerns" but sold them. Hill said she was moving and didn't need them. When asked what firearm she attempted to purchase in March 2024, Hill said a Barrett "M-A," which he described as "full auto" and a "223 caliber." She said she planned to go shooting with friends in Kingman.

The agents confronted Hill about lying and told her it appeared she was straw purchasing. At this point, she admitted that the defendant provided the money for the rifle and told her what to buy. In exchange, the defendant was going to pay off the Hill's trip to Disneyland, which apparently cost $2,000. Hill admitted she had purchased the other firearms for the defendant as well, stating that she wanted to impress him. She said she didn't know why the defendant did not purchase the firearms himself. She also did not know what he planned to do with the firearms.

Hill admitted that there would be messages corroborating her story about the defendant in her phone. She then showed agents her messages and they matched the number for the defendant in her phone to the number he used to call the FFL earlier. Hill again admitted that the Glocks were for the defendant as well, estimating she had purchased four.

During the interview, Hill consented to a screen recording of her phone. Messages supported her story that the defendant procured her straw purchase of the Barrett rifle. The defendant complained about the FFL having his "11 bands" and appeared to admit to having Hill buy other guns. It also appeared that the defendant was grooming and manipulating Hill.

On August 22, 2025, agents arrested the defendant on the instant case. On February 17, 2026, the defendant pleaded guilty to Count 4, Material False Statement During the Purchase of a Firearm, Aid and Abet. The plea agreement stipulates to a low-end cap.

## II.    PRESENTENCE REPORT GUIDELINES CALCULATION

The United States agrees with the Presentence Report's guidelines calculation of Total Offense Level 12, Criminal History Category I, and 10 – 16 months' imprisonment, following adjustments for the number of firearms and acceptance of responsibility. (PSR

at ¶ 21, 26, 28). The PSR recommends a sentence of probation. (*Id*. at p. 18.)

## III.    ANALYSIS

Based on the conduct described above, the United States recommends that this Court sentence the defendant to 10 months' imprisonment. The Sentencing Guidelines are "the starting point and the initial benchmark" for sentencing. *Gall v. United States*, 552 U.S. 38, 49 (2007). After considering the advisory range, the "district court should then consider the § 3553(a) factors to decide if they support the sentence suggested by the parties." *United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008) (en banc). Pursuant to the 18 U.S.C. § 3553(a) factors, the Court shall impose a sentence sufficient, but not greater than necessary to comply with the following purposes:

> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>
> (B) to afford adequate deterrence to criminal conduct;
>
> (C) to protect the public from further crimes of the defendant; and
>
> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. § 3553(a)(2). In considering these factors and purposes, the government's recommended sentence is appropriate.

First, the nature and circumstances of the defendant's conduct warrant a sentence of incarceration. The defendant recruited a young woman to straw purchase firearms for him, seemingly so he could traffic them to others. This is evidenced by the recovery of two firearms in the possession of third parties. One of the firearms was tied to a human smuggling event. Obviously, there is no legitimate purpose for this sort of firearms trafficking, which only serves to arm criminals and promote violence, especially in the case of .50 caliber rifles. The potential consequences to such illegal arms trafficking cannot be overstated.

Beyond general societal harm, it is particularly offensive that the defendant manipulated a young woman to purchase firearms on his behalf. He did so with the promise

of payment, but it is unclear whether the defendant actually paid Hill. For straw purchasing for the defendant, Jamari Hill now has a felony conviction, jeopardizing her future. Hill was ultimately sentenced to probation, but this defendant is not similarly situated, as he is the one who recruited and manipulated her.

The defendant's history and characteristics show contacts with the law dating back to when he was just 13 years old. These contacts include resisting arrest, assault, driving infractions, and probation violations. Most concerning is one local incident in which the defendant was walking around with an AR-15 pointing it in the air, though he was never charged. The defendant does not present with significant mitigation, and he described his childhood as "very good." (PSR at ¶ 47.)

Viewing the offense conduct and the defendant's history, and accounting for the purposes of sentencing in 18 U.S.C. § 3553(a), a sentence of 10 months of imprisonment is appropriate. This defendant was not merely a straw purchaser. Rather, he recruited a young woman to buy firearms for him, likely so he could further traffic them. In doing so, the defendant significantly impacted his codefendant's life for the worse. This, coupled with the inherently dangerous nature of firearms trafficking, warrants a sentence of incarceration. Accordingly, the United States requests that this Court sentence the defendant to 10 months' imprisonment followed by supervised release.  Such a sentence would justly punish the defendant and serve as a deterrent for the defendant and others who wish to engage in similar conduct.

Respectfully submitted this 22nd day of April, 2026.

TIMOTHY COURCHAINE
United States Attorney
District of Arizona

 s/ Patrick E. Chapman
PATRICK E. CHAPMAN
Assistant U.S. Attorney

- 5 -

**CERTIFICATE OF SERVICE**

I hereby certify that on the foregoing date, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing a copy to the following CM/ECF registrant:

Edward Hamel
*Attorney for Defendant*


 */s/ Patrick E. Chapman*
U.S. Attorney's Office

- 6 -